UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

SUZANNE BOELTER, individually
and on behalf of all others similarly
situated,

       Plaintiffs,

v

ADVANCE MAGAZINE
PUBLISHERS, INC., d/b/a
CONDÉ NAST,

       Defendant,

MICHIGAN ATTORNEY
GENERAL BILL SCHUETTE

       Intervenor.

No. 1:15-cv-05671-NRB

HON. NAOMI REICE
BUCHWALD

MAG. SARAH NETBURN

_____/

**INTERVENOR MICHIGAN ATTORNEY GENERAL BILL
SCHUETTE'S BRIEF IN SUPPORT OF THE MICHIGAN
PRESERVATION OF PERSONAL PRIVACY ACT**

Joshua O. Booth
Assistant Attorney General
Appearing *Pro Hac Vice*
State Operations Division
P.O. Box 30754
Lansing, MI  48909
(517) 373-1162
BoothJ2@Michigan.gov
Michigan Bar No. P53847

# TABLE OF CONTENTS

<u>Page</u>

Table of Contents ......................................................................i

Index of Authorities.................................................................ii

Concise Statement of Issues Presented ...................................iv

Introduction...........................................................................1

Statement of Facts .................................................................2

    Background .......................................................................2

    The Michigan Preservation of Personal Privacy Act.......................2

    The procedural posture of this case ...................................3

Argument...............................................................................4

I.    The Michigan Preservation of Personal Privacy Act is
constitutional..................................................................4

    A.    The Privacy Act is not unconstitutional as applied to
Condé Nast. .............................................................5

        1.    The Privacy Act regulates commercial speech and
is subject to intermediate scrutiny. ...............................5

        2.    The Privacy Act survives intermediate scrutiny...........8

    B.    The Privacy Act is not unconstitutional on its face.............12

Conclusion and Relief Requested............................................15

Certificate of Service (e-file).................................................16

i

# INDEX OF AUTHORITIES

<div align="right">Page</div>

## Cases

*Board of Trustees of State Univ. of N.Y. v. Fox,*
  492 U.S. 469 (1989) ................................................................... 8

*Bolger v. Youngs Drug Prods. Corp.,*
  463 U.S. 60 (1983) ..................................................................... 6

*Cent. Hudson Gas & Elec. Corp. v. Public Service Comm'n of New York,*
  447 U.S. 557 (1980) ............................................................... 6, 8

*Connecticut Bar Ass'n v. United States,*
  620 F.3d 81 (2nd Cir. 2010) ....................................................... 6

*Florida Bar v. Went For It, Inc.,*
  515 U.S. 618 (1995) ................................................................... 8

*Interstate Commerce Comm'n v. Brimson,*
  154 U.S. 447 (1894) ................................................................... 9

*Members of City Council of Los Angeles v. Taxpayers for Vincent,*
  466 U.S. 789 (1984) ................................................................. 13

*Ohralik v. Ohio State Bar Ass'n,*
  436 U.S. 447 (1978) ................................................................... 6

*People v. Taravella,*
  350 N.W.2d 780 (Mich. App. 1984) .......................................... 9

*Sorrell v. IMS Health Inc.,*
  131 S. Ct. 2653 (2011) ............................................................ 5, 8

*Stanley v. Georgia,*
  394 U.S. 557 (1969) ................................................................... 9

*United States v. Edge Broad, Co.*,
   509 U.S. 418 (1993) ....................................................................6

*United States v. Williams*,
   553 U.S. 285 (2008) ...............................................................12, 14

## Statutes

Mich. Comp. Laws § 445.17 ...................................................1, 2

Mich. Comp. Laws § 445.1712..............................................3, 5

Mich. Comp. Laws § 445.1713....................................................3

Mich. Comp. Laws § 445.1713(d) .....................................10, 11

Mich. Comp. Laws §§ 445.1713(a), (c).....................................10

Mich. Comp. Laws §§ 445.1713(b), (e) ......................................11

## Other Authorities

H.B. 5331 ...............................................................................2, 9

## CONCISE STATEMENT OF ISSUES PRESENTED

1.     Is the Michigan Preservation of Personal Privacy Act constitutional on its face and as applied to Condé Nast?

## INTRODUCTION

It is no wonder that opening a magazine results in a shower of subscription cards.  Defendant Condé Nast, and similar companies, consider each of those cards to be a permission slip that allows them, under the guise of the First Amendment, to freely ignore the privacy of their customers and disclose personal information for the company's own economic gain.  But the State of Michigan has a significant interest in protecting the privacy of its citizens.  To that end, the Michigan Preservation of Personal Privacy Act[1] places limitations on the disclosure of a consumer's personal information.

These limitations, reasonably restrict disclosures in a manner that protects the privacy of consumers purchasing books, videos and sound recordings, while still recognizing the right of Condé Nast, and similar businesses and persons that provide such materials to consumers, to engage in constitutionally protected commercial speech.  Accordingly, Condé Nast's challenge to the constitutionality of the Privacy Act must fail.

---

[1] Mich. Comp. Laws § 445.17, *et seq*.  The Preservation of Personal Privacy Act will be referred to as the Privacy Act or the Act.

## STATEMENT OF FACTS

### Background

In 1987, Judge Robert Bork was nominated by President Reagan

to be an Associate Justice of the United States Supreme Court.  During

the course of the confirmation proceedings, a list of videotapes rented by

Judge Bork was printed in the press.  Deemed by many to be an

unwarranted invasion of privacy, the State of Michigan enacted

legislation to protect a consumer's personal privacy in buying and

renting videos, sound recordings, and books.  That legislation is the

Privacy Act.  Mich. Comp. Laws § 445.17, *et seq*. See generally,

Michigan House Legislative Analysis, Second Analysis, H.B. 5331,

January 20, 1989; Complaint, Doc #1, Page 23.

### The Michigan Preservation of Personal Privacy Act

In general, the Privacy Act prohibits a person or business, such as

Condé Nast, from disclosing information pertaining to a customer's

purchase, rental, or borrowing of videos, books, and sound recordings

that identifies the customer.  Specifically, the Act provides:

> Except as provided in section 3 or as otherwise provided by
> law, a person, or an employee or agent of the person,
> engaged in the business of selling at retail, renting, or

> lending books or other written materials, sound recordings, or video recordings shall not disclose to any person, other than the customer, a record or information concerning the purchase, lease, rental, or borrowing of those materials by a customer that indicates the identity of the customer.

Mich. Comp. Laws § 445.1712 (footnote omitted).

This general prohibition is not without exceptions, however, as there are numerous circumstances in which disclosure of such information is allowed.  Those circumstances include disclosures: (1) with the written permission of the customer; (2) pursuant to a court order, search warrant, or subpoena; (3) that are reasonably necessary to collect payment for the material purchased or rented; and (4) for the exclusive purpose of marketing directly to the customer, so long as the customer is given written notice and an opportunity to have their name removed.  Mich. Comp. Laws § 445.1713.

**The procedural posture of this case**

Plaintiff Suzanne Boelter claims that Condé Nast disclosed her personal information in violation of the Privacy Act.  More specifically, Boelter alleges that Condé Nast disclosed information, such as her address and the name of the magazine to which she subscribes, to "data mining" companies and other third parties without obtaining her

consent or providing her notice of the disclosure (Complaint, Doc #1, Pages 15-18).

In response, Condé Nast moved to dismiss, arguing, among other things, that the Privacy Act is an unconstitutional infringement on the freedom of speech guaranteed by the First Amendment (Condé Nast's Memorandum of Law, Doc #19, Pages 20-22).

Neither the State of Michigan, nor any agency, officer nor employee of the State of Michigan was a named party to this action. Michigan Attorney General Bill Schuette has moved to intervene on the question of whether the Act is constitutional, and offers this brief in support of the constitutionality of the Privacy Act.

## ARGUMENT

## I.   The Michigan Preservation of Personal Privacy Act is constitutional.

The Privacy Act does not violate the First Amendment.  Instead, the legislation, as applied to Condé Nast, regulates commercial speech and passes the requisite intermediate scrutiny.  Further, the regulations are not so overbroad as to render the Act unconstitutional on its face.

## A.   The Privacy Act is not unconstitutional as applied to Condé Nast.

First, the Privacy Act regulates "commercial speech" and is therefore subject to intermediate scrutiny.  And, since the Act is sufficiently tailored to directly advance a substantial interest the State has in protecting the privacy of its citizens, it survives that test and is constitutional as applied to Condé Nast.

### 1.   The Privacy Act regulates commercial speech and is subject to intermediate scrutiny.

The "speech" here is the dissemination of information – specifically, the disclosure of "a record or information concerning the purchase, lease, rental, or borrowing" of "books or other written materials, sound recordings, or video recordings" that "indicates the identity of the customer."  Mich. Comp. Laws § 445.1712.  "[T]he creation and dissemination of information are speech within the meaning of the First Amendment."  *Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 2667 (2011).

For First Amendment purposes, however, the Supreme Court has recognized a "common-sense" distinction between commercial and non-commercial speech, the former of which has traditionally been subject to

5

government regulation.  *United States v. Edge Broad, Co.*, 509 U.S. 418, 426 (1993).  "The Constitution . . . accords a lesser protection to commercial speech than to other constitutionally guaranteed expression."  *Cent. Hudson Gas & Elec. Corp. v. Public Service Comm'n of New York*, 447 U.S. 557, 563 (1980).  "[C]ommensurate with its subordinate position in the scale of First Amendment values," commercial speech "is subject to modes of regulation that might be impermissible in the realm of noncommercial expression."  *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978).

The "core notion" of commercial speech is that which "does no more than propose a commercial transaction."  *Connecticut Bar Ass'n v. United States*, 620 F.3d 81, 93-94 (2nd Cir. 2010) (quoting *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983) (internal quotation marks and citation omitted)).  But "the Supreme Court has also defined commercial speech as 'expression related solely to the economic interests of the speaker and its audience.' "  *Connecticut Bar Ass'n,* 620 F.3d at 94 (quoting *Cent. Hudson Gas & Elec. Corp.*, 447 U.S. at 561). The speech at issue in this case falls within this definition.

The dissemination of the information here, i.e., the speech, by Condé Nast is related solely to the economic interests of the speaker and its audience.  In particular, the information, which was obtained by Condé Nast during the course of its commercial business, was, and is being, disseminated by Condé Nast (the speaker) for economic value to a purchaser (Condé Nast's audience) who, in turn, uses it to further its own economic interests.  For example, the information allows a purchaser to directly solicit or advertise, or at the very least narrow the scope of their solicitations or advertisements, at a fraction of the cost of blanket solicitations or advertisements, in order to transmit their own (likely commercial) speech to those with the most potential to be interested.  Simply put, the information at issue is a record of certain individuals' economic activity that is sold for economic gain for the economic benefit of the purchaser.  As such, the information falls within the definition of "commercial speech," and, consequently, the regulations imposed on that speech by the Privacy Act are subject to intermediate scrutiny.

## 2. The Privacy Act survives intermediate scrutiny.

To establish the constitutionality of regulations on commercial speech under intermediate scrutiny, "the State must show at least that the statute directly advances a substantial government interest and that the measure is drawn to achieve that interest." *Sorrell*, 131 S. Ct. at 2667-2668 (citing *Cent. Hudson*, 447 U.S. at 566). While the measure must be "narrowly drawn," it need not be the "least restrictive means" or the "single best disposition." *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 632 (1995) (internal quotation marks and citation omitted). Instead, there must only be "a 'fit between the legislature's ends and the means chosen to accomplish those ends.'" *Sorrell*, 131 S. Ct. at 2668 (quoting *Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989)). A "fit that is not necessarily perfect, but reasonable," and "in proportion to the interest served." *Florida Bar*, 515 U.S. at 632 (internal quotation marks and citation omitted).

As mentioned, the purpose of the Act is to protect personal privacy regarding an individual's choice in purchasing or borrowing video, audio, and reading materials, because "one's choice in videos, records, and books is nobody's business but one's own." House Legislative

Analysis, Second Analysis, H.B. 5331, January 20, 1989; Complaint,

Doc #1, Page 23.  This purpose is consistent with an individual's rights

to receive information and ideas to satisfy one's intellectual and

spiritual needs, and the privacy one has in pursuing that satisfaction

and ultimate happiness.  *Stanley v. Georgia*, 394 U.S. 557, 564-565

(1969) (recognizing the First and Fourteenth Amendment rights one

has in the possession of reading and video material).  The exemption of

such "private affairs . . . from the inspection and scrutiny of others" is

an indispensable aspect of a citizen's right of personal security, which is

"essential to his peace and happiness."  *Interstate Commerce Comm'n v.*

*Brimson*, 154 U.S. 447 479 (1894) (recognizing an individual's rights in

their private books and papers).  And the State of Michigan has a

"substantial interest" in protecting its citizens from unwanted

intrusions into their private affairs.  *People v. Taravella*, 350 N.W.2d

780, 784 (Mich. App. 1984) (upholding the constitutionality of a statute

criminalizing the malicious use of telephone services).

This substantial interest of the State of Michigan is directly

advanced by the Privacy Act.  In particular, prohibiting disclosure of the

personal information at issue directly protects Michigan citizens

against unwanted intrusions into their private affairs, and promotes the pursuit of intellectual and spiritual fulfillment without being subjected to the scrutiny of others.

In addition, the restrictions on the disclosure are sufficiently tailored to pass constitutional muster. In particular, there is no blanket prohibition on disclosure, as there are several circumstances in which the personal information may be disclosed, including circumstances where the customer has consented to Condé Nast's disclosure, and where the disclosure is reasonably necessary for Condé Nast to collect payment from the customer. Mich. Comp. Laws §§ 445.1713(a), (c). And while disclosure is also allowed for "the exclusive purpose of marketing goods and services directly to the consumer,"[2] that allowable disclosure does not establish that the Privacy Act is not sufficiently tailored. The direct marketing exception is not unrestricted and still provides for the protection of a consumer's privacy by requiring that the

---

[2] Mich. Comp. Laws § 445.1713(d).

consumer be given notice and an opportunity to have their name removed.  Mich. Comp. Laws § 445.1713(d).[3]

All told, even if the Privacy Act is not a "perfect fit," it strikes a reasonable balance between Condé Nast's right to engage in commercial speech and an individual's right to privacy in their intellectual and spiritual pursuits.  On one hand, Condé Nast's commercial speech is not completely banned, and its economic interests in collecting payment and making disclosures for direct marketing purposes are protected, and disclosures for any other purpose are allowed if Condé Nast simply obtains the consumer's consent.  On the other hand, the consumer's privacy is protected, but for circumstances in which a court order or subpoena compels disclosure, disclosure is necessary to collect payment from the consumer, or disclosure is explicitly or implicitly permitted by the consumer.  The limitations and burdens imposed on Condé Nast by the Privacy Act are proportional considering the nature of Condé Nast's speech, which, because it is commercial speech, holds a "subordinate position" on the spectrum of constitutional values and is entitled to a

---

[3] The other circumstances in which disclosure is allows are "[p]ursuant to a court order," and "[p]ursuant to a search warrant . . . or grand jury subpoena."  Mich. Comp. Laws §§ 445.1713(b), (e).

lesser degree of protection than the right consumers have in their own privacy.  Consequently, the Act passes intermediate scrutiny and is constitutional as applied to Condé Nast.

## B.    The Privacy Act is not unconstitutional on its face.

Condé Nast claims that the Privacy Act is unconstitutional on its face because it is overbroad (Condé Nast's Memorandum of Law, Doc #19, Pages 21-22).  But, even to the extent the Act does restrict non-commercial speech, it is not facially invalid.

Under the overbreadth doctrine, a statute that has legitimate constitutional applications may still be "facially invalid if it prohibits a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 292-293 (2008).  But "[i]nvalidation for overbreadth is strong medicine that is not to be casually employed." *Id*. at 293 (internal quotations marks, ellipses, and citations omitted).  In particular, it will only be employed where the overbreadth is "*substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Id*. (emphasis in original).  In other words, "[t]he 'mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.'" *Id*.

at 303, quoting *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984).  Instead, "there must be a *realistic danger* that the statute itself will *significantly compromise* recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds."  *Members of City Council of Los Angeles*, 466 U.S. at 801 (emphasis added).

Here, as discussed, the Act has a plainly legitimate sweep in protecting the privacy of Michigan citizens.  Although Condé Nast proffers hypotheticals regarding "prosaic interactions" that could arguably result in constitutionally impermissible applications of the Act,[4] Condé Nast provides no reason to believe that the vast majority of the disclosures will be for anything other than the economic, commercial, reasons previously discussed; and regulation of those disclosures raises no constitutional problems.  Consequently, Condé Nast has failed to establish that there is a *realistic danger* that the Act

---

[4] For example, Condé Nast contends that, "if the employee of a Michigan newsstand that sells, or library that lends, written materials just sold or lent Michael Moore a copy of *National Review*, they could not answer if the next patron in line asked if that was Michael Moore buying a copy of *National Review*" (Condé Nast's Memorandum of Law, Doc #19, Page 21 n 14).

will *significantly compromise* a substantial amount of protected speech. *See e.g.*, *Williams*, 553 U.S. at 303 (finding a statute was not overbroad where, "[i]n the vast majority of its applications," the statute "raises no constitutional problems whatever").  Accordingly, the Privacy Act is constitutional on its face.

## CONCLUSION AND RELIEF REQUESTED

The Michigan Preservation of Personal Privacy Act is

constitutional on its face and as applied to Condé Nast.  Therefore,

Michigan Attorney General Bill Schuette respectfully requests that this

Court decline Condé Nast's invitation to declare the Act

unconstitutional.

Respectfully submitted,

Bill Schuette
Attorney General

/s/ Joshua O. Booth
Assistant Attorney General
Appearing *Pro Hac Vice*
State Operations Division
P.O. Box 30754
Lansing, MI  48909
(517) 373-1162
BoothJ2@Michigan.gov
Michigan Bar No. P53847

Dated:  February 11, 2016

## CERTIFICATE OF SERVICE (E-FILE)

I hereby certify that on February 11, 2016, I electronically filed the

above document(s) with the Clerk of the Court using the ECF System,

which will provide electronic copies to counsel of record.

<div style="margin-left: 50%;">

/s/ Joshua O. Booth
Assistant Attorney General
Appearing *Pro Hac Vice*
State Operations Division
P.O. Box 30754
Lansing, MI  48909
(517) 373-1162
BoothJ2@Michigan.gov
Michigan Bar No. P53847

</div>

2016-0129728-B

16