# BURSOR & FISHER
P.A.

**888 SEVENTH AVENUE**　　　　　　　　　　　　　　　　　　　　**JOSEPH I. MARCHESE**
**NEW YORK, NY 10019**　　　　　　　　　　　　　　　　　　　　　　Tel: **646.837.7410**
**www.bursor.com**　　　　　　　　　　　　　　　　　　　　　　　　Fax: **212.989.9163**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**jmarchese@bursor.com**

May 4, 2016

<u>*Via ECF:*</u>

The Honorable Naomi Reice Buchwald
United States District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007

Re:    *Boelter v. Advance Magazine Publishers Inc.*, Case No. 15-cv-05671-NRB (S.D.N.Y.)

Dear Judge Buchwald:

　　　　My firm represents Plaintiff Suzanne Boelter ("Plaintiff") in the above-referenced action. I write in response to Defendant Advance Magazine Publishers Inc., d/b/a Condé Nast's ("Condé Nast") May 3, 2016 letter, Doc. No. 41 ("Def.'s Ltr."), regarding recent amendments to the Michigan Preservation of Personal Privacy Act, M.C.L. §§ 445.1711, *et seq.* (the "PPPA"). Plaintiff opposes Condé Nast's request for supplemental briefing because the amendments to the PPPA do not impact this action.

　　　　Under Michigan law, statutory amendments "are presumed to operate prospectively unless the contrary intent is clearly manifested." *Frank W. Lynch & Co. v. Flex Technologies, Inc.*, 463 Mich. 578, 583 (2001). "This is especially true if retroactive application of a statute would impair vested rights, create a new obligation and impose a new duty, or attach a disability with respect to past transactions." *Id.*  As the Michigan Supreme Court recently stated "[r]etroactive application of legislation presents problems of unfairness … because it can deprive citizens of legitimate expectations and upset settled transactions." *LaFontaine Saline, Inc. v. Chrysler Group, LLC*, 496 Mich. 26, 38 (2014) (internal quotations omitted).

　　　　Condé Nast failed to address this heavy presumption. Rather, Condé Nast states in conclusory fashion that the text of Enacting Provisions, § 2 clarifies that the Michigan Legislature's "intent was always that a civil action for a violation of the [PPPA] … could *only* be brought by a 'customer who has suffered actual damages as a result of the violation.'" Def.'s Ltr. at 2. But the required analysis under Michigan law compels a different conclusion.

　　　　In determining whether a law has retroactive effect, Michigan courts consider four factors. "First, we consider whether there is a specific language providing for retroactive application. Second, in some situations [not presented here], a statute is not regarded as operating retroactively merely because it relates to an antecedent event. Third, in determining retroactivity, we must keep in mind that retroactive laws impair vested rights acquired under existing laws or create new obligations or duties with respect to transactions or considerations already past. Finally, a remedial or procedural act not affecting vested rights may be given

retroactive effect where the injury or claim is antecedent to the enactment of the statute." *LaFontaine Saline, Inc.*, 496 Mich. at 38-39.

The first factor weighs against retroactivity, as the amended PPPA does not contain specific language providing for retroactive application. To the contrary, the text of Enacting Provision § 2 indicates prospective application.[1] The Provision does not include express language regarding retroactivity. "The Michigan Supreme Court has repeatedly observed that the Michigan Legislature 'knows how to make clear its intention that a statute apply retroactively,' so the absence of express retroactive language is a strong indication that the Legislature did not intend a statute to apply retroactively." *Kia Motors Am., Inc. v. Glassman Oldsmobile Saab Hyundai, Inc.*, 706 F.3d 733, 739 (6th Cir. 2013) (citing *Brewer v. A.D. Transport Express, Inc.*, 486 Mich. 50, 56 (2010) (quoting *Frank W. Lynch & Co.*, 463 Mich. at 584) (providing examples of statutory amendments that expressly used the word "retroactive")); *see also LaFontaine Saline, Inc.*, 496 Mich. at 39-40 (same). Here, the amendment does not use any form of the word "retroactive" to describe its application. Additionally, the portions of the Provision at issue are written in the future tense. The Provision reads that the "amendatory act is *curative*." The word "curative" does not denote retroactivity. The Michigan Legislature knows this as evidenced by other recent statutory amendments that supplemented the word "curative" with express retroactive language. *See, e.g.*, *Damiler Chrysler Servs. of N. Am, LLC v. Dep't of Treasury*, 2010 WL 199575, at *2 n.1 (Mich. Ct. App. Jan. 21, 2010) ("The amendment to M.C.L. 205.54i also contains the following enacting provision ... [t]his amendatory act is curative and *shall be retroactively applied*.") (emphasis added). Furthermore, the last clause of the Provision states "that a civil action for a violation of those prohibitions *may only be brought* by a customer who has suffered actual damages as a result of the violation." Enacting Provision, § 2 (emphasis added). Had the Michigan Legislature wanted this provision to apply retroactively, it would have written this text in the past tense, *e.g.*, a civil action for violation of the PPPA "may *have* only been brought." *See Davis v. State Employees' Retirement Bd.*, 272 Mich. App. 151, 157 (2006) ("Given the use of the language 'who becomes,' which is strictly in the future tense, as opposed to or coordinated with the use of 'who was,' 'who is,' or 'who became,' and taking into consideration the statute's effective date of March 27, 2002, the only logical conclusion is that the Legislature specifically intended the amendment to apply only to situations ... [which] first arose on or after March 27, 2002.").

The cases cited by Condé Nast are easily distinguishable because the statutory amendments at issue included express retroactive language. *See In re Oswalt*, 444 F.3d 524, 527-28 (6th Cir. 2006) ("The Michigan legislature further provided that '[t]his section applies to all transactions, liens, and mortgages within its scope *even if* the transaction, lien, or mortgage was entered into or created *before* July 14, 2003.'") (quoting M.C.L. § 125.2330i(10)) (emphasis added); *People v. Sheeks*, 244 Mich. App. 584, 590 (2001) (amendment included legislative history stating that it was intended to address a pending case).[2]

---

[1] Enacting Provision § 1 provides further indication that the amendments to the PPPA are not retroactive as it states, "[t]his amendatory act takes effect 90 days after the date it is enacted into law." Enacting Provision, § 1. Thus, the amendment is not yet effective but will take effect on July 31, 2016, more than one year after the filing of this lawsuit.

[2] The second *LaFontaine Saline, Inc.* factor is not applicable to the circumstances of this case.

The third factor also weighs against retroactivity. By Condé Nast's own admission, retroactive application would deprive Plaintiff of statutory standing without actual injury. *See* Def.'s Ltr. at 2 ("[T]here is … *now*, no statutory standing where there is no injury.") (emphasis added). Thus, retroactive application of these amendments would impermissibly "impair vested rights," because it would deprive Plaintiff of the statutory standing she had when she filed this action on July 20, 2015. *Frank W. Lynch & Co.*, 463 Mich. at 583; *see also Davis*, 272 Mich. App. at 158 ("A statute may not be applied retroactively if it abrogates or impairs vested rights."). Moreover, retroactive application would "present[] problems of unfairness," because it would "deprive [Plaintiff] of legitimate expectations and upset settled transactions." *LaFontaine Saline, Inc.*, 496 Mich. at 38. As alleged in her Complaint, Doc. No. 1 ("Compl."), Plaintiff "would not have been willing to pay as much, if at all, for her *Bon Appéttit* and *Self* subscriptions had she known that Condé Nast would disclose her Personal Reading Information" in violation of the PPPA. Compl. ¶ 7. But the amendments to the PPPA significantly alter the privacy protections afforded by the Act. For example, the amended PPPA significantly alters the "exclusively for direct marketing" exception because it removes the word "exclusive," provides for additional forms of acceptable written notice, and even permits Condé Nast to disclose a customer's name for 30 days after that customer provides written notice to Condé Nast instructing that it discontinue disclosing her name. *See* Section 3(e). Thus, retroactive application of the PPPA would deprive Plaintiff of legitimate expectations she had under the law when she subscribed to Condé Nast's magazines.[3]

Additionally, the fourth factor weighs against retroactivity because the amendments are not merely remedial or procedural. In applying this factor Michigan courts "have rejected the notion that a statute significantly altering a party's substantive rights should be applied retroactively merely because it can also be characterized in a sense as remedial." *Frank W. Lynch & Co.*, 463 Mich. at 585. Thus, "the term 'remedial' in this context should only be employed to describe legislation that does not affect substantive rights." *Id.* As described above the amended PPPA significantly alters the privacy protections afforded by the Act. It therefore is not merely remedial or procedural. *See, e.g.*, *Brewer*, 486 Mich. at 58 (amendment was not remedial or procedural where it "imposed a new legal burden on out-of-state employers").[4]

Condé Nast also argues that the "lack of any legally cognizable damages also warrants dismissal for failure to satisfy the $5 million aggregate amount-in-controversy" requirement under CAFA. Def.'s Ltr. at 2. But, "for purposes of diversity jurisdiction, the amount in controversy is established as of the date of the complaint and is not reevaluated based on post-filing events." *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 506 (2d Cir. 2005).

---

[3] Retroactive application of the PPPA amendments would also run afoul of the Contracts Clauses of the United States and Michigan Constitutions as it would alter the terms of Plaintiff's magazine subscription contracts. *See* U.S. Const. art. I, § 10, clause 1; Mich. Const. art. I, § 10.

[4] *Allstate Ins. Co. v. Faulhaber*, 157 Mich. App. 164 (1987) is distinguishable. There, the statutory amendment was remedial or procedural because it "did not create a new substantive right for insurance companies, but instead simply provided for a definitive statute of limitations in reimbursement actions. Prior to the statutory amendment, no clear statute of limitations existed in such actions." *Id.* at 167.

  Finally, even if the amendments were interpreted to apply retroactively, and deprive Plaintiff of standing without actual injury, they still would not impact the pending Motion to Dismiss because Plaintiff sets forth well-recognized theories of actual damages in the forms of overpayment and retention of money received by selling her Personal Reading Information. *See, e.g.*, Compl. ¶¶ 7, 83.

  Plaintiff therefore respectfully requests that the Court deny Condé Nast's request for additional briefing on its Motion to Dismiss.

Very truly yours,

*[signature]*

Joseph I. Marchese

CC:  All counsel of record (via ECF)