UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELIZABETH MOELLER, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>ADVANCE MAGAZINE PUBLISHERS, INC. d/b/a CONDÉ NAST,<br><br>        Defendant. | Civil Action No. 15-cv-05671-NRB |

**DECLARATION OF JOSEPH I. MARCHESE IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

I, Joseph I. Marchese, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

  1.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff in this action. I am an attorney at law licensed to practice in the State of New York, and I am a member of the bar of this Court. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would testify competently thereto.

  2.  I make this declaration in support of Plaintiff's motion for preliminary approval of class action settlement filed herewith.

  3.  Attached hereto as **Exhibit A** is a true and correct copy of the Parties' Class Action Settlement Agreement, and the exhibits attached thereto.

  4.  On July 20, 2015, Suzanne Boelter filed a putative class action on behalf of Condé Nast subscribers alleging violations of the PPPA. *See* Dkt. 1.

  5.  In response to the complaint, on September 17, 2015, Defendant Advance Magazine Publishers, Inc. d/b/a Condé Nast ("Condé Nast" or "Defendant") filed a letter

requesting a premotion conference on a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), arguing, *inter alia*, that Plaintiff lacked Article III standing and failed to state a claim upon which relief could be granted.  Dkt. 15.

6. On October 2, 2015 – after the Court granted permission – Condé Nast filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6).  Dkt. 18.  On November 3, 2015, Ms. Boelter opposed Condé Nast's motion to dismiss.  Dkt. 25.  On November 24, 2015, Condé Nast filed a reply in support of its motion to dismiss.  Dkt. 30.  Subsequently, the Parties submitted multiple letters to the court discussing supplemental developments and authority, including the Michigan Legislature's May 2, 2016 enactment of an amendment to the PPPA that *inter alia* clarified that Act's the civil remedy required proof of actual damages (Dkt. 41-44); the U.S. Supreme Court's decision in *Spokeo, Inc. v. Robins* (Dkt. 45-46); and rulings in other PPPA litigation.

7. On July 12, 2016, the Court held oral argument on Condé Nast's motion to dismiss.  Dkt. 54.

8. On September 28, 2016, the Court issued a Memorandum and Order denying Condé Nast's motion to dismiss.  Dkt. 61.

9. On November 1, 2016, with consent of Condé Nast, Ms. Boelter and Plaintiff filed a First Amended Complaint adding Ms. Moeller as a named Plaintiff to this action.  Dkt. 72.

10. On December 21, 2016, the Court held an initial scheduling conference pursuant to Fed. R. Civ. P. 16 and entered a phased discovery schedule.  Dkt. 79.  Phase I discovery focused on the claims of the named Plaintiff and Ms. Boelter, while Phase II discovery focused on the claims of the putative class.  *Id.*

11. On May 3, 2017, the Parties entered into a stipulation of dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) voluntarily dismissing Ms. Boelter's individual claims with prejudice. Dkt. 84.

12. On June 21, 2017, the Parties completed Phase I discovery, which included the production and review of thousands of pages of documents, interrogatories, and depositions of the Parties, as well as two third-party witnesses. The documents included Plaintiff's magazine subscription records, records of transmission of Plaintiff's customer information to multiple third-party companies, and Condé Nast's purported notices of the disclosures.

13. From the outset of the case, the Parties engaged in direct communication, and as part of their obligation under Fed. R. Civ. P. 26, discussed the prospect of resolution. To that end, on July 7, 2017, the Parties met in-person for approximately 1 hour to discuss potential resolution. While the Parties engaged in good faith negotiations, which at all times were at arms'-length, they failed to reach agreement.

14. On September 1, 2017, Condé Nast filed a motion for summary judgment. Dkt. 89. On September 28, 2017, Plaintiff filed an opposition to Condé Nast's motion, Dkt. 101, as well as her own motion for partial summary judgment. Dkt. 96. On October 26, 2017, Condé Nast filed an opposition to Plaintiff's motion for partial summary judgment, and a reply brief in support of its motion for summary judgment. Dkt. 109. On November 7, 2017, Plaintiff filed a reply brief in support of her motion for partial summary judgment. Dkt. 115.

15. On April 12, 2018, the Parties met in-person again for approximately 1 hour to discuss potential resolution. Those discussions eventually led to an agreement between the Parties to engage in mediation, which the Parties agreed would take place on July 17, 2018 before Jill Sperber, Esq., who is a neutral affiliated with Judicate West.

16. On June 18, 2018, in advance of the mediation, the Court so-ordered the Parties' stipulated withdrawal of their cross motions for summary judgment without prejudice. Dkt. 120.

17. On July 17, 2018, the Parties participated in a mediation with Ms. Sperber at the New York office of Dentons US LLP. The mediation lasted approximately 9.5 hours. While the Parties engaged in good faith negotiations, which at all times were at arms'-length, they failed to reach an agreement that day.

18. Following the mediation session, the Parties worked further with Ms. Sperber and, with her help, were able to reach an agreement on all material terms of a class action settlement, and thereafter executed a term sheet.

19. The resulting $13.75 million Proposed Settlement secures extraordinary relief for the class. Based on Condé Nast's records the proposed Settlement Class includes approximately 1,158,089 persons with a Michigan street address who subscribed to a Condé Nast Publication to be delivered to a Michigan street address between July 20, 2009 and July 30, 2016. With a $13.75 million non-reversionary Settlement Fund, and based on class action claims rates that have been experienced in similar cases (including in *Taylor v. Trusted Media Brands, Inc.*, 7:16-cv-01812-KMK (S.D.N.Y.)), Class Counsel estimates that each claimant should receive approximately $75 in cash.

20. My firm, Bursor & Fisher, P.A., has significant experience in litigating class actions of similar size, scope, and complexity to the instant action. (*See* Firm Resume of Bursor & Fisher, P.A., a true and accurate copy of which is attached hereto as **Exhibit B**). My firm regularly engages in major complex litigation involving consumer privacy, including recent PPPA cases such as *Taylor*, has the resources necessary to conduct litigation of this nature, and has frequently been appointed lead class counsel by courts throughout the country. My firm has

also been recognized by courts across the country for its expertise.  (*See* Ex. B); *see also Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. Feb. 25, 2014) ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008."); *In re Michaels Stores Pin Pad Litigation*, Civil Action No. 11-cv-03350, Dkt. 22 (N.D. Ill. June 8, 2011) (appointing Bursor & Fisher class counsel to represent a putative nationwide class of consumers who made in-store purchases at Michaels using a debit or credit card and had their private financial information stolen as a result).

21.     The Parties agreed to the terms of the Settlement through experienced counsel who possessed all the information necessary to evaluate the case, determine all the contours of the proposed class, and reach a fair and reasonable compromise after negotiating the terms of the Settlement at arm's length and with the assistance of a neutral mediator.

22.     Plaintiff and proposed Class Counsel recognize that despite our belief in the strength of Plaintiff's claims, and Plaintiff's and the Class's ability to ultimately each secure a $5,000 statutory award under the PPPA, the expense, duration, and complexity of protracted litigation would be substantial and the outcome uncertain.

23.     Plaintiff and proposed Class Counsel are also mindful that absent a settlement, the success of Defendant's various defenses in this case could deprive the Plaintiff and the Settlement Class Members of any potential relief whatsoever.  Defendant is represented by highly experienced attorneys who have made clear that absent a settlement, they were prepared to continue their vigorous defense of this case.  Plaintiff and Class Counsel are also aware that Defendant would continue to challenge liability and the constitutionality of the PPPA, as well as

assert a number of defenses.  Defendant had indicated that it would continue to assert numerous defenses on the merits.  More specifically, Plaintiff is aware that Defendant would continue to assert that the PPPA does not prohibit the disclosure of the magazine subscriptions information at issue (because the third-party recipients of the disclosures are Condé Nast's agents), that Condé Nast also provided appropriate notice of its practices, and that the PPPA does not apply to subscriptions that were not sold by Condé Nast "at retail," as is required to come under the scope of the statute.  Defendant would also continue to challenge Plaintiff's standing, and the constitutionality of the PPPA, as well as its applicability to magazines in particular and the magazine publishing industry in general.  Plaintiff and Class Counsel are also aware that Defendant would oppose class certification vigorously, and that Defendant would prepare a competent defense at trial.  Looking beyond trial, Plaintiff is also keenly aware that Defendant could appeal the merits of any adverse decision, and that in light of the statutory damages in play it would argue – in both the trial and appellate courts – for a reduction of damages based on due process concerns.

24.     Plaintiff and proposed Class Counsel believe that the relief provided by the settlement weighs heavily in favor of a finding that the settlement is fair, reasonable, and adequate, and well within the range of approval.

I declare under penalty of perjury that the above and foregoing is true and accurate.  Executed this 21st day of August 2018 at New York, New York.

>     */s Joseph I. Marchese*
>     Joseph I. Marchese