**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ELIZABETH MOELLER, individually and on behalf
of all others similarly situated,

                       Plaintiff,

     v.

ADVANCE MAGAZINE PUBLISHERS, INC. d/b/a
CONDÉ NAST,

                    Defendant.

Civil Action No. 15-cv-05671-NRB

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR**
**<u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

Dated: February 11, 2019

**BURSOR & FISHER, P.A.**

Scott A. Bursor
Joseph I. Marchese
Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: scott@bursor.com
       jmarchese@bursor.com
       pfraietta@bursor.com

*Class Counsel*

**TABLE OF CONTENTS**

**PAGE(S)**

INTRODUCTION ............................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ...................................................... 2

    A.     Michigan's Preservation Of Personal Privacy Act ................................. 2

    B.     Plaintiff's Allegations ............................................................................ 3

    C.     The Litigation History And Settlement Discussions .............................. 4

TERMS OF THE SETTLEMENT ................................................................................... 6

    A.     Class Definition ...................................................................................... 6

    B.     Monetary Relief ...................................................................................... 6

    C.     Release .................................................................................................... 6

    D.     Notice And Administration Expenses ..................................................... 7

    E.     Incentive Award ...................................................................................... 7

    F.     Attorneys' Fees And Expenses ............................................................... 7

ARGUMENT .................................................................................................................... 7

    I.     CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS
           APPROPRIATE ........................................................................................ 7

           A.     Numerosity ............................................................................... 8

           B.     Commonality ............................................................................ 9

           C.     Typicality ................................................................................ 10

           D.     Adequacy ................................................................................ 11

           E.     The Proposed Settlement Class Is Ascertainable .................. 12

           F.     The Proposed Settlement Class Meets The Requirements of
               Rule 23(b)(3) .......................................................................... 13

               1.     Common Questions Predominate .................................. 13

               2.     A Class Action Is A Superior Mechanism For
                     Adjudication ......................................................... 14

    II.     THE NOTICE PLAN COMPORTS WITH DUE PROCESS ............................... 15

III.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE,
         AND ADEQUATE AND SHOULD BE APPROVED BY THE
         COURT ....................................................................................................16

         A.     The Proposed Settlement Is Procedurally Fair (Fed. R. Civ.
                P. 23(e)(2)(B))...............................................................................17

         B.     The Proposed Settlement Is Substantively Fair ...........................18

                1.     Litigation Through Trial Would Be Complex,
                       Costly, And Long (Fed. R. Civ. P. 23(e)(2)(C)(i)
                       And *Grinnell* Factor 1) ....................................................19

                2.     The Reaction Of The Class Is Overwhelmingly
                       Positive (Fed. R. Civ. P. 23(e)(2)(C)(ii) And
                       *Grinnell* Factor 2).........................................................21

                3.     Discovery Has Advanced Far Enough To Allow
                       The Parties To Responsibly Resolve The Case
                       (*Grinnell* Factor 3)........................................................22

                4.     The Continued Litigation Risks Related To
                       Establishing Liability, Damages, And Maintaining
                       A Class Action Through Trial Support Settlement
                       (Fed. R. Civ. P. 23(e)(2)(C)(i) And *Grinnell*
                       Factors 4, 5, And 6) ...........................................................22

                5.     Defendant's Ability To Withstand A Greater
                       Judgment (*Grinnell* Factor 7).........................................24

                6.     The Settlement Amount Is Reasonable In Light Of
                       The Possible Recovery And The Attendant Risks
                       Of Litigation (Fed. R. Civ. P. 23(e)(2)(C)(i) And
                       *Grinnell* Factors 8 And 9)..............................................24

CONCLUSION.....................................................................................................25

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*,
271 F. App'x 41 (2d Cir. 2008) ........................................................................15

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .................................................................................13, 14

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
133 S. Ct. 1184 (2013) ..................................................................................14

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000) .........................................................................11, 12

*Beckman v. Keybank, N.A.*,
2013 WL 1803736 (S.D.N.Y. Apr. 29, 2013) ...................................................15

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007) ............................................................................9

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ....................................................................passim

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995) ..............................................................................8

*Coulter-Owens v. Time, Inc.*,
308 F.R.D. 524 (E.D. Mich. 2015) .........................................8, 10, 11, 14

*Dupler v. Costco Wholesale Corp.*,
249 F.R.D. 29 (E.D.N.Y. 2008) .......................................................................9

*Ebin v. Kangadis Food Inc.*,
297 F.R.D. 561 (S.D.N.Y. 2014) .................................................................11, 12

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) .......................................................................................15

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005) ...............................................................17, 24, 25

*Gilliam v. Addicts Rehab. Ctr. Fund*,
2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) .....................................................25

*Hanlon v. Chrysler*,
150 F.3d 1011 (9th Cir. 1998) .........................................................................21

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) ...................................................17

iii

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000)...................................................... 19, 22, 23

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  2007 WL 2230177 (S.D.N.Y. July 27, 2007) ................................................17

*In re Google Buzz Privacy Litig.*,
  2011 WL 7460099 (N.D. Cal. June 2, 2011)..................................................20

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ...............................................15

*In re MetLife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010)............................................................21

*In re Petrobas, Sec.*,
  862 F.3d 250 (2d Cir. 2017) ..........................................................................13

*In re Prudential Insur. Sales Practices Litig.*,
  962 F. Supp. 450 (D.N.J. 1997) ....................................................................14

*In re Visa Check/MasterMoney Antitrust Litig.*,
  280 F.3d 124 (2d Cir. 2001) ..........................................................................13

*In re Vitamin C Antitrust Litig.*,
  2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012)...................................... 18, 21, 23

*Joel A. v. Giuliani*,
  218 F.3d 132 (2d Cir. 2000) ..........................................................................25

*Kinder v. Meredith Corp.*,
  2016 WL 454441 (E.D. Mich. 2016) ........................................................10, 14

*Krueger v. N.Y. Tel. Co.*,
  163 F.R.D. 433 (S.D.N.Y. 1995) .....................................................................9

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ...................................................................passim

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997) .......................................................................8, 10

*Massiah v. MetroPlus Health Plan, Inc.*,
  2012 WL 5874655 (E.D.N.Y. 2012)................................................................21

*McBean v. City of New York*,
  228 F.R.D. 487 (S.D.N.Y. 2005) ....................................................................13

*McReynolds v. Richards-Cantave*,
  588 F.3d 790 (2d Cir. 2009) ..........................................................................18

*Michalow v. E. Coast Restoration & Consulting Corp.*,
  2011 WL 6942023 (E.D.N.Y. Nov. 17, 2011).................................................9

*Monaco v. Stone,*
  187 F.R.D. 50 (E.D.N.Y. 1999) ...................................................................9

*Newman v. Stein,*
  464 F.2d 689 (2d Cir. 1972) .....................................................................24

*PaineWebber,*
  171 F.R.D. 104 (S.D.N.Y. 1997) .............................................................23

*Parker v. Time Warner Entertainment Co.,*
  239 F.R.D. 318 (E.D.N.Y. 2007) .............................................................10

*Robidoux v. Celani,*
  987 F.2d 931 (2d Cir. 1993) ..........................................................8, 10, 11

*Rossini v. Ogilvy & Mather, Inc.,*
  798 F.2d 590 (2d Cir. 1986) .....................................................................13

*TBK Partners, Ltd. v. Western Union Corp.,*
  517 F. Supp. 380 (S.D.N.Y. 1981) ...........................................................19

*Teachers' Ret. Sys. Of Louisiana v. A.C.L.N. Ltd.,*
  2004 WL 2997957 (S.D.N.Y. May 14, 2004) ..........................................25

*Tiro v. Public House Invs., LLC,*
  2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013)..........................................17

*Torres v. Gristede's Oper. Corp.,*
  2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010)...........................................22

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
  396 F.3d 96 (2d Cir. 2005) .................................................................15, 17

*Weigner v. City of N.Y.,*
  852 F.2d 646 (2d Cir. 1988) .............................................................15, 16

*Yang v. Focus Media Holding Ltd.,*
  2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014)............................................14

*Yuzary v. HSBC Bank USA, N.A.,*
  2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013)..............................................14

**STATUTES**

Michigan Preservation of Personal Privacy Act, M.C.L. §§ 445.1711-1715.......................passim

**RULES**

Fed. R. Civ. P. 16.................................................................................................4

Fed. R. Civ. P. 23...........................................................................................passim

Fed. R. Civ. P. 41(a)(1)(A)(ii) .............................................................................4

## INTRODUCTION

On October 24, 2018, this Court preliminarily approved the Class Action Settlement between Plaintiff Elizabeth Moeller ("Plaintiff") and Defendant Advance Magazine Publishers, Inc. d/b/a Condé Nast ("Defendant" or "Condé Nast") and directed that notice be sent to the Settlement Class.  Dkt. 130.  The settlement administrator, JND Legal Administration ("JND") has implemented the Court-approved notice plan and direct notice has reached 98.9% of the certified Settlement Class.  The reaction from the Class has been overwhelmingly positive.  Specifically, of the approximately 1,155,538[1] Settlement Class Members, zero objected, and only 4 requested to be excluded.[2]  As of February 7, 2019, 101,022 class members have filed claims, and that number will continue to grow as Settlement Class Members have until 45 days after the date of entry of Final Judgment to file claims.  Thus, the Court should have no hesitation in granting final approval to the unopposed Settlement.

The Settlement provides for substantial *pro rata* cash payments to Settlement Class Members, which Class Counsel estimates will be approximately $75 per claimant.  The Settlement creates a non-reversionary $13.75 million cash common fund, which will be used to pay all approved claims by Settlement Class Members, notice and administration expenses, a Court-approved incentive award to Plaintiff, and attorneys' fees, costs, and expenses to Class Counsel to the extent awarded by the Court.

The $13.75 million cash fund is well within the range of settlements that have been finally approved by other courts in Michigan Preservation of Personal Privacy Act, M.C.L. §§ 445.1711-1715 ("PPPA") class actions, and, in fact, exceeds the total value of all but

---

[1] The number of class members was initially estimated as approximately 1,158,089 persons. Defendant provided JND with a list of 1,158,377 persons that resulted in a list containing 1,155,538 unique members of the Settlement Class after duplicates were removed.  Declaration of Jennifer M. Keough Regarding Settlement Administration ("Keough Decl.") ¶¶ 7-8.

[2] The deadline to object or opt-out of the Settlement was January 26, 2019. Dkt. 130 ¶¶ 16, 21.

one such settlement.  *See Ruppel v. Consumers Union of United States, Inc.*, 7:16-cv-02444-KMK, Dkt. 111 (S.D.N.Y. Dec. 4, 2018) (granting final approval to a settlement that created a $16.375 million cash fund); *Perlin v. Time Inc.*, 2:16-cv-10635-GCS, Dkt. 55 (E.D. Mich. Oct. 15, 2018) (granting final approval to a settlement that created a $7.4 million cash fund); *Taylor v. Trusted Media Brands, Inc.*, 7:16-cv-01812-KMK, Dkt. 87 (S.D.N.Y. Feb. 1, 2018) (granting final approval to a settlement that created an $8.225 million cash fund); *Moeller v. American Media Inc.*, 5:16-cv-11367-JEL, Dkt. 42 (E.D. Mich. Sept. 28, 2017) (granting final approval to a settlement that created a $7.6 million cash fund); *Coulter-Owens v. Rodale, Inc.*, 1:14-cv-11284-RHC, Dkt. 54 (E.D. Mich. Sept. 29, 2016) (granting final approval to a settlement that created a $4.5 million cash fund); *Kinder v. Meredith Corp.*, 1:14-cv-11284-TLL, Dkt. 72 (E.D. Mich. Oct. 5, 2015) (granting final approval to a settlement that created a $7.5 million cash fund); *Halaburda v. Bauer Publishing Co.*, 2:12-cv-12831-GCS, Dkt. 68 (E.D. Mich. Jan. 6, 2015) (granting final approval to a settlement that created a $775,000 cash fund).

Moreover, when compared to approved settlements of cases alleging violations of similar privacy statutes – which typically offer no monetary relief to the class whatsoever – the fairness, reasonableness, and adequacy of the instant Settlement becomes even more apparent.  *See, e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 820-22 (9th Cir. 2012) *cert. denied*, 134 S. Ct. 8 (2013) (approving a settlement of federal Video Privacy Protection Act ("VPPA") claims with $9.5 million to *cy pres* as the sole form of monetary relief).

For these reasons, and as explained further below, the Settlement is fair, reasonable, and adequate, and warrants this Court's final approval.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  Michigan's Preservation Of Personal Privacy Act

The Michigan legislature passed the PPPA "to preserve personal privacy with respect to

the purchase, rental, or borrowing of written materials, sound recordings, and video recordings."

First Amended Class Action Complaint, Dkt. 74 ("FAC") Ex. A.  The PPPA provides that:

> a person, or an employee or agent of the person, engaged in the business of selling at retail . . . books or other written materials . . . shall not disclose to any person, other than the customer, a record or information concerning the purchase . . . of those materials by a customer that indicates the identity of the customer.

M.C.L. § 445.1712.

To enforce the statute, the PPPA authorizes civil actions and provides for statutory damages in the amount of $5,000, plus costs and reasonable attorneys' fees.  *See id.* § 445.1715.

### B.   Plaintiff's Allegations

Condé Nast is an international media company that publishes widely-circulated magazines throughout the United States, such as *GQ*, *The New Yorker*, *Vanity Fair*, and *Vogue*. *See* FAC ¶ 1.  Plaintiff alleges that Condé Nast sells information related to its customers' magazine subscription histories and personal reading habits. *Id.* ¶¶ 1-4, 8, 40-46.  To increase the value of such information, Plaintiff alleges that Condé Nast trades its customers' protected reading information with certain third parties – including data mining companies – in exchange for other demographic and lifestyle data that such companies have already gathered (or "mined") on each subscriber. *Id.* ¶¶ 8, 40-42.  Plaintiff further alleges that Condé Nast thereafter "enhances" its own customer profiles with this additional data (*e.g.*, income levels, religion, age, race, political affiliation, travel habits, medical conditions, etc.), and then allegedly sells the enhanced information to other unrelated third parties for a profit. *Id.* ¶¶ 8, 40-42.

Plaintiff further alleges that no matter how consumers subscribe (*i.e.*, via postcard, over the phone, on Condé Nast's website, or through a subscription agent's website), Condé Nast's customers never provide consent to disclose information related to their magazine subscriptions to third parties. *Id.* ¶¶ 8, 43-44.  This is because – during the subscription process – Plaintiff claims that customers are not required to consent to any terms or policies informing them of

Condé Nast's alleged disclosure practices.  *Id.*

### C.   The Litigation History And Settlement Discussions

On July 20, 2015, Suzanne Boelter filed a putative class action on behalf of Condé Nast subscribers alleging violations of the PPPA.  *See* Dkt. 1.  On September 17, 2015, Condé Nast filed a letter requesting a premotion conference on a motion to dismiss under Rules 12(b)(1) and 12(b)(6), arguing, *inter alia*, that Plaintiff lacked Article III standing and failed to state a claim upon which relief could be granted. Dkt. 15.  On October 2, 2015 – after the Court granted permission – Condé Nast filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6).  Dkt. 18. On November 3, 2015, Ms. Boelter opposed Condé Nast's motion to dismiss.  Dkt. 25.  On November 24, 2015, Condé Nast filed a reply in support of its motion to dismiss.  Dkt. 30. Thereafter, the Parties submitted multiple letters to the court discussing supplemental developments and authority.  Dkts. 41-46.

On July 12, 2016, the Court held oral argument on Condé Nast's motion to dismiss.  Dkt. 54.  And on September 28, 2016, the Court denied the motion to dismiss.  Dkt. 61.

On November 1, 2016, with consent of Condé Nast, Ms. Boelter and Plaintiff filed a First Amended Complaint adding Ms. Moeller as a named Plaintiff to this action.  Dkt. 72.

On December 21, 2016, the Court held an initial scheduling conference pursuant to Fed. R. Civ. P. 16 and entered a phased discovery schedule.  Dkt. 79.  Phase I discovery focused on the claims of the named Plaintiff and Ms. Boelter, while Phase II discovery focused on the claims of the putative class.  *Id.*

On May 3, 2017, the Parties stipulated to the dismissal of Ms. Boelter's individual claims with prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii).  Dkt. 84.

On June 21, 2017, the Parties completed Phase I discovery, which included the production and review of thousands of pages of documents, interrogatories, and depositions of

the Parties, as well as two third-party witnesses. *See* Declaration of Joseph I. Marchese In Support Of Plaintiff's Motion For Final Approval Of Class Action Settlement ("Marchese Decl.") ¶¶ 11-14, 16-17.

From the outset of the case, the Parties engaged in direct communication and, as part of their obligations under Fed. R. Civ. P. 26, discussed the prospect of resolution. *Id.* ¶ 18. To that end, on July 7, 2017, the Parties met in-person for approximately 1 hour to discuss potential resolution. *Id.* While the Parties engaged in good faith negotiations, which at all times were at arms' length, they failed to reach agreement that day. *Id.*

On September 1, 2017, Condé Nast filed a motion for summary judgment. Dkt. 89. On September 28, 2017, Plaintiff filed an opposition to Condé Nast's motion, Dkt. 101, as well as her own motion for partial summary judgment. Dkt. 96. On October 26, 2017, Condé Nast filed an opposition to Plaintiff's motion for partial summary judgment, and a reply brief in support of its motion for summary judgment. Dkt. 109. On November 7, 2017, Plaintiff filed a reply brief in support of her motion for partial summary judgment. Dkt. 115.

On April 12, 2018, the Parties met in-person again for approximately 1 hour to discuss potential resolution. Marchese Decl. ¶ 20. Those discussions eventually led to an agreement between the Parties to engage in mediation, which the Parties agreed would occur on July 17, 2018, before Jill Sperber, Esq., who is a neutral affiliated with Judicate West. *Id.* On June 18, 2018, in advance of the mediation, the Parties' stipulated to withdrawal of their cross motions for summary judgment without prejudice pending mediation. Dkt. 120. On July 17, 2018 the Parties participated in a full-day mediation with Ms. Sperber at the New York office of Dentons US LLP. Marchese Decl. ¶ 22. The mediation lasted approximately 9.5 hours. *Id.* While the Parties engaged in good faith negotiations, which at all times were at arms'-length, they failed to reach agreement that day. *Id.* However, because the mediation session was productive, Ms.

Sperber made a mediator's proposal to the Parties to settle the case the following day, which, two days later, both Parties accepted. *Id.* ¶ 23.  Thereafter, the Parties executed a term sheet and drafted and executed the Settlement Agreement and related documents. *Id.*  On October 24, 2018, the Court granted preliminary approval to the Settlement.  Dkt. 130.

## TERMS OF THE SETTLEMENT

The key terms of the Settlement Agreement ("Agreement" or "Settlement"), attached to the Marchese Declaration as Exhibit A, are briefly summarized as follows:

### A.  Class Definition

As part of preliminary approval, the Court provisionally certified a class for settlement purposes of: "all Persons with a Michigan street address who subscribed to a Condé Nast Publication to be delivered to a Michigan street address between July 20, 2009 and July 30, 2016."  Dkt. 130 ¶ 9; Agreement ¶ 1.31.[3]

### B.  Monetary Relief

Condé Nast has established a $13.75 million non-reversionary cash Settlement Fund, from which each Settlement Class Member who submits a valid claim shall be entitled to a *pro rata* portion after payment of notice and administrative expenses, attorneys' fees, and an incentive award to the Class Representative.  Agreement ¶¶ 1.33, 2.1.  No portion of the Settlement Fund will revert back to Defendant.  *Id.* ¶ 1.33.  Individual cash payments are estimated to be approximately $75.

### C.  Release

In exchange for the relief described above, Condé Nast and each of its related and

---

[3] Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons.

affiliated entities as well as all "Released Parties" as defined in ¶ 1.27 of the Settlement will receive a full release of all claims arising out of or related to Condé Nast's disclosure of its Michigan customers' magazine subscription information. *See id.* ¶¶ 1.26-1.28.

### D.   Notice And Administration Expenses

Condé Nast has paid, and will continue to pay or cause to be paid, all notice and administration expenses out of the Settlement Fund. *Id.* ¶¶ 1.29, 1.33.

### E.   Incentive Award

In recognition for her efforts on behalf of the Settlement Class, Condé Nast has agreed that Plaintiff Moeller may receive, subject to Court approval, an incentive award of $10,000 from the Settlement Fund, as appropriate compensation for her time and effort serving as Class Representative and as a party to the Action. *Id.* ¶¶ 1.33, 8.3.

### F.   Attorneys' Fees And Expenses

Condé Nast has agreed that the Settlement Fund may also be used to pay Class Counsel reasonable attorneys' fees, and to reimburse costs and expenses in this Action, in an amount to be approved by the Court. *Id.* ¶ 8.1. Class Counsel petitioned the Court for an award of attorneys' fees equal to one-third of the Settlement Fund, plus reimbursement of costs and expenses. *Id.*; *see also* Dkt. 132. That motion is unopposed, and there were no objections to it. Payment of attorneys' fees, costs, and expenses is due within 10 days after entry of the Court's Final Judgment. *Id.* ¶ 8.2.

## ARGUMENT

## I.   CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

The Court's Preliminary Approval Order provisionally certified a class for settlement purposes of: "all Persons with a Michigan street address who subscribed to a Condé Nast Publication to be delivered to a Michigan street address between July 20, 2009 and July 30,

2016."  Dkt. 130 ¶ 9 (the "Settlement Class").

Under Federal Rule of Civil Procedure 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the Court to find that:

> questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).  In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir 1997) (internal citation omitted).

The  Court should now grant final certification because the Settlement Class meets all of the requirements of Rule 23(a) and Rule 23(b)(3).  *See Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524 (E.D. Mich. 2015) (granting plaintiff's motion for class certification of a PPPA claim against another magazine publisher); Marchese Decl. Ex. C, 1/31/18 *Trusted Media Brands* Fairness Hearing Transcript ("*TMBI* Hearing Tr.") at 9:2-4 (certifying class for PPPA settlement).

A.    **Numerosity**

Numerosity is satisfied when "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  For purposes of Rule 23(a)(1), "[i]mpracticable does not mean impossible."  *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).  "[N]umerosity is presumed at a level of 40 members."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Here, the Settlement Class easily satisfies Rule 23's numerosity requirement.  According to Defendant's records, the Settlement Class is comprised of approximately 1,155,538 persons with a Michigan street address who subscribed to a Condé Nast Publication to be delivered to a Michigan street address between July 20, 2009 and July 30, 2016.  Marchese Decl. ¶ 24.  There is no question that joinder of all members of the Settlement Class would be impractical and numerosity is, therefore, satisfied.

### B.      Commonality

Rule 23(a)(2) requires that a plaintiff establish that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  This commonality requirement is met "if plaintiffs' grievances share a common question of law or of fact."  *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007).  The disputed issue of law or fact must "occupy essentially the same degree of centrality to the named plaintiffs' claim as to that of other members of the proposed class."  *Krueger v. N.Y. Tel. Co.*, 163 F.R.D. 433, 442 (S.D.N.Y. 1995) (internal quotations omitted).  "[A] single common issue of law will satisfy the commonality requirement."  *Michalow v. E. Coast Restoration & Consulting Corp.*, 2011 WL 6942023, at *3 (E.D.N.Y. Nov. 17, 2011); *Monaco v. Stone*, 187 F.R.D. 50, 61 (E.D.N.Y. 1999).  A common issue of law will be found if plaintiffs "identify some unifying thread among the members' claims."  *Monaco*, 187 F.R.D. at 61.  Courts find common issues of law even if there is "some factual variation among class members' specific grievances."  *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 37 (E.D.N.Y. 2008).

Here, Plaintiff alleges that the common contention on which the claims of all Class Members depends is that Defendant disclosed each of its customers' protected personal reading information to third parties in violation of the PPPA.  Plaintiff contends that determination of the truth or falsity of this contention can be made on a class wide basis and will resolve an issue –

the key issue in the case – central to each class member's claims at once.

Determining the truth or falsity of this common contention raises common questions that track the elements of a PPPA claim.  Numerous courts considering settlement classes in the context of PPPA claims have agreed.  *See, e.g.*, *TMBI* Hearing Tr. at 6:11-15; *Moeller*, 5:16-cv-11367-JEL, Dkt. 42; *Kinder*, 2016 WL 454441, at *1.  Moreover, the only court to consider a contested motion for class certification under the PPPA certified the class.  *See Coulter-Owens*, 308 F.R.D. at 532-34 (finding PPPA litigation against another magazine publisher was "driven by issues that are common to the entire putative class").

Several federal courts have similarly held that cases like this one – in which defendants are accused of uniformly disclosing information protected by a privacy statute – raise common issues of fact or law.  *See, e.g.*, *Parker v. Time Warner Entertainment Co*., 239 F.R.D. 318, 329-30 (E.D.N.Y. 2007) (commonality established where "the claims are derived from the same legal theory and based upon the same factual question – whether class members were injured because of [defendant's] disclosure of their [statutorily protected information] without properly notifying them of that practice").  Given that there are multiple questions of law and fact common to members the Settlement Class, the commonality requirement is satisfied.

C.     **Typicality**

Rule 23(a)(3) requires that "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotation marks omitted).  Typicality is satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  *Robidoux*, 987 F.2d at 936.  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the

10

typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Id.* at 936-37.

Here, Plaintiff alleges that Defendant's disclosure of her subscriptions is not a one-off situation unique to her, but rather, part of Defendant's alleged business of disclosing its customers' subscription information to third parties without consent. FAC ¶¶ 1-4, 8, 40-46. It is Plaintiff's contention that no matter the person – whether it be Plaintiff or other members of the Settlement Class – the disclosures are alleged to be made in the exact same manner and for the exact same purpose. And, because Plaintiff alleges that such conduct violates the PPPA, which provides identical statutory damages to all members of the Settlement Class, her claims are typical of the other Settlement Class Members. Accordingly, by pursuing her own claims in this matter, Plaintiff will necessarily advance the interests of the Settlement Class, and typicality is therefore satisfied. *See, e.g., TMBI* Hearing Tr. at 6:15-16; *Coulter-Owens*, 308 F.R.D. at 534-35; *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565-66 (S.D.N.Y. 2014) (Rakoff, J.) (typicality requirement was satisfied where "the lead plaintiffs' and other class members' claims ar[o]se out of the same course of conduct by the defendant and [were] based on the same legal theories").

### D. Adequacy

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced, and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Both of these factors are met here.

In this case, Plaintiff – like each and every one of the Settlement Class Members – has a Michigan street address and subscribed to Condé Nast Publications to be delivered to a Michigan

11

street address, and then allegedly had her subscription information disclosed to third parties without consent.  FAC ¶¶ 8, 40-46.  Thus, Plaintiff and the Settlement Class Members have the exact same interest in recovering the statutory damages to which they are entitled under the PPPA.  As such, Plaintiff does not have any interest antagonistic to those of the proposed Settlement Class and her pursuit of this litigation should be clear evidence of that.  Moreover, Plaintiff was extensively involved in the litigation and settlement of this case.  *See* Declaration of Elizabeth Moeller, Dkt. 134 ¶¶ 3-11; Declaration of Joseph I. Marchese, Dkt. 133 ¶¶ 74-76.

Likewise, Class Counsel – Bursor & Fisher, P.A. – has extensive experience in litigating class actions of similar size, scope, and complexity to the instant action.  Marchese Decl. ¶¶ 32-33.  Class Counsel regularly engages in major complex litigation involving consumer privacy, including recent and ongoing PPPA cases, has the resources necessary to conduct litigation of this nature, and has frequently been appointed lead class counsel by courts throughout the country.  *Id.*; *see* Marchese Decl. Ex. B (Firm Resume of Bursor & Fisher, P.A.); *Ebin*, 297 F.R.D. at 566 ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008.").

Accordingly, since Plaintiff and Class Counsel have demonstrated their commitment to representing the Settlement Class and neither have interests antagonistic to the Settlement Class, the adequacy requirement is satisfied.

### E.    The Proposed Settlement Class Is Ascertainable

Though it does not appear in the text of Rule 23, courts in this Circuit have recognized an "implied requirement of ascertainability."  *Ebin*, 297 F.R.D. at 566-67.  "The ascertainability doctrine that governs in this Circuit requires only that a class be defined using objective criteria

that establish a membership with definitive boundaries." *In re Petrobas Sec.*, 862 F.3d 250, 264 (2d Cir. 2017). Here, the Settlement Class is defined as "all Persons with a Michigan street address who subscribed to a Condé Nast Publication to be delivered to a Michigan street address between July 20, 2009 and July 30, 2016." Dkt. 130 ¶ 9. "[T]his class satisfies the ascertainability requirement as it is limited to Michigan residents who subscribed to the aforementioned publications between the prescribed time period." *TMBI* Hearing Tr. at 7:20-23.

### F.     The Proposed Settlement Class Meets The Requirements of Rule 23(b)(3)

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

### 1.     Common Questions Predominate

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, … predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001). The essential inquiry is whether "liability can be determined on a classwide basis, even when there are some individualized damage issues." *Id.* at 139. Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005). Notably, Rule 23(b)(3) calls only for "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013).

In this case, Defendant allegedly engaged in a common course of conduct. In these circumstances, courts find, particularly for purposes of settlement, that there is predominance of common questions over individual issues. *See TMBI* Hearing Tr. at 8:13-21; *Moeller*, 5:16-cv-11367, Dkt. 42; *Kinder*, 2016 WL 454441, at *2; *Coulter-Owens*, 308 F.R.D. at 536; *see also In re Prudential Insur. Sales Practices Litig.*, 962 F. Supp. 450, 511-512 n.45 (D.N.J. 1997) ("*Prudential I*") (citing numerous other cases).

## 2.     A Class Action Is A Superior Mechanism For Adjudication

Rule 23(b)(3) also requires that the class action be "superior to other available methods for fair and efficient adjudication of the litigation." Fed. R. Civ. P. 23(b)(3).[4] "Courts have found that the superiority requirement is satisfied where[] [t]he potential class members are both significant in number and geographically dispersed[,] [and] [t]he interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions." *Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *13-14 (S.D.N.Y. Sept. 4, 2014). "Class adjudication … is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually." *Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 5492998, at *4 (S.D.N.Y. Oct. 2, 2013).

Class treatment here will facilitate the favorable resolution of all Settlement Class Members' claims. Given that there are approximately 1,155,538 Settlement Class Members, the class device is the most efficient and fair means of adjudicating these claims. "Class adjudication of this case is superior to individual adjudication because it will conserve judicial

---

[4] Whether the case would be manageable as a class action at trial is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.").

resources and is more efficient for Class Members, particularly those who lack the time and other resources to bring their claims individually." *Beckman v. Keybank, N.A.*, 2013 WL 1803736, at *3 (S.D.N.Y. Apr. 29, 2013).  Moreover, Plaintiff is unaware of any individual lawsuits that have been filed by Settlement Class Members arising from the same allegations.  Therefore, a class action is the superior method of adjudicating the Settlement Class Members' claims.

**II.      THE NOTICE PLAN COMPORTS WITH DUE PROCESS**

Before final approval can be granted, due process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  "Such notice to class members need only be reasonably calculated under the circumstances to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections."  *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *12 (S.D.N.Y. Dec. 23, 2009).  Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options.  *See* Fed. R. Civ. P. 23(c)(2)(B).  At its core, all that notice must do is "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (citation omitted).

"It is clear that for due process to be satisfied, not every class member need receive actual notice, as long as counsel 'acted reasonably in selecting means likely to inform persons affected.'"  *In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*, 271 F. App'x 41, 44 (2d Cir. 2008) (quoting *Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988)).  The Federal Judicial Center notes that a notice plan is reasonable if it reaches at least 70% of the class.  *See*

Fed. Judicial Ctr., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* 3 (2010).  The notice plan here easily meets these standards, as it provided direct notice via a postcard or email to 98.9% of the Settlement Class.  *See* Keough Decl. ¶ 15.

At preliminary approval, the Court approved the Parties' proposed Notice Plan, finding it met the requirements of Rule 23 and due process.  *See* Dkt. 130 ¶ 12.  The Plan has now been fully carried out by professional settlement administrator JND.  Pursuant to the Settlement, Defendant provided JND with a list of 1,158,377 available names, addresses and emails of potential Settlement Class Members.  *See* Keough Decl. ¶ 7.  After JND removed duplicates, the Class List contained 1,155,538 unique members.  *See id.* ¶ 8.  JND successfully delivered the Court-approved notice via email to 319,246 class members and via postcard to 824,452 class members.  *See id.* ¶ 15.  Accordingly, the Court-approved notice successfully reached 98.9% of the Settlement Class directly.  *See id.*[5]  These summary notices also directed Settlement Class Members to the Settlement Website, where they were able to submit claims online; access important court filings, including the Motion for Attorneys' Fees and all related documents; and see deadlines and answers to frequently asked questions.  *See id.* ¶ 17.

Given the broad reach of the notice, and the comprehensive information provided, the requirements of due process and Rule 23 are easily met.

## III. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

Final approval of the Settlement is appropriate here because it is procedurally and substantively fair, adequate, and reasonable.  *See* Fed. R. Civ. P. 23(e)(2).[6]  To determine

---

[5] On August 27, 2018, JND also notified the appropriate state and federal officials pursuant to CAFA.  *See* Keough Decl. ¶¶ 4-6.

[6] Effective December 1, 2018, Rule 23(e) was amended.  The 2018 amendment to Rule 23(e) provides factors for the Court to consider for approval of a proposed class action settlement.  *See* Fed. R. Civ. P. 23(e)(2).  The new Rule 23(e)(2) factors overlap with the Second Circuit's *Grinnell* factors, as set forth and discussed below.

whether to approve a settlement, "[c]ourts examine procedural and substantive fairness in light of the 'strong judicial policy in favor of settlement' of class action suits." *Tiro v. Public House Invs., LLC*, 2013 WL 4830949, at *5 (S.D.N.Y. Sept. 10, 2013). "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc.*, 396 F.3d at 116 (internal quotations omitted).

Importantly, courts and public policy considerations favor settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. "The compromise of complex litigation is encouraged by the courts and favored by public policy," and is particularly encouraged for the compromise of class actions. *Id.* at 117. If the settlement was achieved through arms'-length negotiations by experienced counsel, "[a]bsent fraud or collusion … [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

## A. The Proposed Settlement Is Procedurally Fair (Fed. R. Civ. P. 23(e)(2)(B))

The circumstances surrounding the Settlement support the finding that the Settlement is procedurally fair. Courts examining the procedural fairness of a settlement do so "in light of the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves." *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2009 WL 3077396, at *6 (E.D.N.Y. Sept. 25, 2009).

The Settlement was reached after two in-person settlement meetings and a mediation with a well-respected class action mediator, and was reached at the mediator's recommendation. And

the negotiations leading to the Settlement were conducted by highly qualified counsel who respectively sought to obtain the best possible result for their clients. Moreover, the Settlement was reached after the Parties had fully briefed competing motions for summary judgment, and after over three years of litigation, including complete Phase I discovery. *See* Marchese Decl. ¶¶ 4-17 (summary of litigation); *id.* ¶¶ 18-23 (summary of negotiations). In such situations, the Second Circuit adopts "a presumption of fairness, reasonableness, and adequacy as to the settlement where a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) ("Such a presumption is consistent with the strong judicial policy in favor of settlements, particularly in the class action context.").

> **B.      The Proposed Settlement Is Substantively Fair**

In addition to being procedurally fair, the Settlement is also substantively fair, reasonable, and adequate. "Courts in the Second Circuit evaluate the substantive fairness, adequacy, and reasonableness of a settlement according to the factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)." *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012). The nine *Grinnell* factors include: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Id.* at *4 (quoting *Grinnell*, 495 F.2d at 463). However, in reviewing and approving a settlement, "a court need not conclude that all of the *Grinnell* factors weigh in favor

of a settlement," rather courts "should consider the totality of these factors in light of the particular circumstances." *Id.* Here, the *Grinnell* factors weigh in favor of final approval.

> ### 1. Litigation Through Trial Would Be Complex, Costly, And Long (Fed. R. Civ. P. 23(e)(2)(C)(i) And *Grinnell* Factor 1)

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to avoid significant expense and delay, and instead ensure recovery for the Class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000). Courts have consistently held that, unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results. *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd,* 675 F.2d 456 (2d Cir. 1982).

This case is no exception. As discussed above, the Parties have engaged in extensive document and deposition discovery, including third-party discovery. Marchese Decl. ¶¶ 11-14, 16-17. The next steps in the litigation would have been resolution by the Court of the Parties' motions for summary judgment, Phase II discovery, and then class certification, which would be costly and time-consuming for the Parties and the Court, and create risk that a litigation class would not be certified and/or that the Settlement Class would recover nothing at all. Condé Nast had indicated that it would continue to assert numerous defenses on the merits. More specifically, Plaintiff is aware that Condé Nast would continue to assert that the PPPA does not prohibit the disclosure of the magazine subscriptions information at issue (because the third-party recipients of the disclosures are Condé Nast's agents), that Condé Nast also provided appropriate notice of its practices, and that the PPPA does not apply to subscriptions that were not sold by Condé Nast "at retail," as is required to come under the scope of the statute. Condé

Nast would also continue to challenge Plaintiff's standing, and the constitutionality of the PPPA, as well as its applicability to magazines in particular and the magazine publishing industry in general.  Plaintiff and Class Counsel are also aware that Condé Nast would oppose class certification vigorously, and that Condé Nast would prepare a competent defense at trial.  Looking beyond trial, Plaintiff is also keenly aware that Condé Nast could appeal the merits of any adverse decision, and that in light of the statutory damages in play it would argue – in both the trial and appellate courts – for a reduction of damages based on due process concerns.  *See id.* ¶ 27.

The Settlement, on the other hand, permits a resolution of this action on terms that are fair, reasonable, and adequate to the Class.  This result will come years earlier than if the case proceeded to judgment through trial and/or appeals, and provides certainty, whereas litigation does not and could result in defeat for the Class on summary judgment, at trial, or on appeal.

Against that backdrop of uncertainty, the benefits of the Settlement are obvious and unmistakable:  it delivers immediate cash relief to the Settlement Class Members years earlier than if the case proceeded to judgment for the Plaintiff through trial and/or appeals.  Specifically, the $13.75 million settlement fund for the benefit of approximately 1,155,538 potential class members will provide an estimated $75 cash *pro rata* payment.  The reasonableness of the anticipated $75 *pro rata* payments becomes all the more apparent when looking at the relief afforded in the typical privacy settlement, where classes tend to be enormous, but individual class members receive only *cy pres* relief without any individual payments.  *See, e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 820-22 (9th Cir. 2012) (affirming $9.5 million settlement providing *cy pres* payment as sole monetary relief in case where statutory damages of up to $10,000 per claim were available in class of millions), *cert. denied* 134 U.S. 8 (Nov. 4, 2013); *In re Google Buzz Privacy Litig.*, 2011 WL 7460099, at *3-5 (N.D. Cal. June 2, 2011) (approving

$8.5 settlement providing *cy pres* payment as sole monetary relief in case where statutory damages of up to $10,000 per claim were available in a class of millions).  Consequently, this *Grinnell* factor weighs in favor of final approval of the Settlement.

## 2.  The Reaction Of The Class Is Overwhelmingly Positive (Fed. R. Civ. P. 23(e)(2)(C)(ii) And *Grinnell* Factor 2)

With the second *Grinnell* factor, the Court judges "the reaction of the class to the settlement."  *In re Vitamin C Antitrust Litig*, 2012 WL 5289514, at *4 (quoting *Grinnell*, 495 F.2d at 463).  "It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."  *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 333 (E.D.N.Y. 2010) (internal quotation marks omitted).  This "significant" factor weighs heavily in favor of final approval.

Here, the reaction of the Class Members to the Settlement has been overwhelmingly positive.  Class Notice has been provided to the Settlement Class Members in accordance with the requirements of Rule 23(c)(2)(B) and the Preliminary Approval Order (Dkt. 130 ¶¶ 12-14), and direct notice reached 98.9% of the Settlement Class.  *See* Marchese Decl. ¶ 30; Keough Decl. ¶¶ 4-15.  As of February 7, 2019, 101,022 people have already filed valid claims, <u>zero</u> objected to the Settlement, and only 4 opted-out (a mere 0.0003% of the Settlement Class).  *See* Keough Decl. ¶¶ 18-20.  This exceptional participation rate and lack of objections from the Settlement Class leave no question that the class members view the Settlement favorably, which weighs heavily in favor of final approval and further supports the "presumption of fairness." *See, e.g., Hanlon v. Chrysler*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *4 (E.D.N.Y. 2012) ("The fact that the vast majority of class

members neither objected nor opted out is a strong indication of fairness."). Consequently, this *Grinnell* factor weighs in favor of final approval of the Settlement.

> **3.    Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3)**

As discussed above, the Parties completed Phase I discovery, which included substantial document production, interrogatories, depositions of the Plaintiff and the Defendant, and third-party discovery.  *See supra*; *see also* Marchese Decl. ¶¶ 11-14, 16-17.  The documents included Plaintiff's magazine subscription records, records of transmissions of Plaintiff's customer information to multiple third-party companies, and Defendant's purported notices of the disclosures.  Class Counsels' experience in similar matters, as well as the efforts made by counsel on both sides confirms that they are sufficiently well apprised of the facts of this action, and the strengths and weaknesses of their respective cases, to make an intelligent analysis of the proposed settlement.

"The pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *Torres v. Gristede's Oper. Corp.*, 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010) (internal quotation omitted).  "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotation marks omitted).  The discovery conducted in this matter clearly traverses this hurdle.  This *Grinnell* factor thus also weighs in favor of final approval.

> **4.    The Continued Litigation Risks Related To Establishing Liability, Damages, And Maintaining A Class Action Through Trial Support Settlement (Fed. R. Civ. P. 23(e)(2)(C)(i) And *Grinnell* Factors 4, 5, And 6)**

"The fourth, fifth, and sixth *Grinnell* factors all relate to continued litigation risks," *i.e.*,

the risks of establishing liability, damages, and maintaining the class action through trial. *In re Vitamin C*, 2012 WL 5289514, at *5. "'Litigation inherently involves risks.'" *Willix v. Healthfirst, Inc.*, 2011 WL 7584862, at *4 (E.D.N.Y. Feb. 18, 2011) (quoting *In re PaineWebber*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997)). "One purpose of a settlement is to avoid the uncertainty of a trial on the merits." *Id.*

Although Plaintiff's case is strong, it is not without risk. At the time of the Settlement, Defendant had a motion for summary judgment pending, and had made it clear that it would vigorously contest the certification of a litigation class. In weighing the risks of certifying a class and establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian And German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (internal quotations omitted).

In the context of this litigation, Plaintiff and the Class face risks in overcoming Defendant's summary judgment motion and certifying a class. Moreover, further litigation would only delay (if not deny) relief to the Class Members. The Settlement alleviates these risks and provides a substantial benefit to the Class in a timely fashion.

The risk of maintaining the class status through trial is also present. The Court has not yet certified the proposed Class for litigation purposes and the Parties anticipate that such a determination would be reached only after Phase I dispositive motions are decided, Phase II discovery is completed, and exhaustive class certification briefing is filed. Defendant would likely argue that individual questions preclude class certification. Defendant would also likely argue that a class action is not a superior method to resolve Plaintiff's claims, and that a class trial would not be manageable.

Should the Court certify the class, Defendant would likely challenge certification through a Rule 23(f) application and subsequently move to decertify, forcing additional rounds of

briefing.  Risk, expense, and delay permeate such a process.  The proposed Settlement eliminates this risk, expense, and delay as well.  Consequently, these *Grinnell* factors weigh in favor of final approval of the Settlement.

### 5.   Defendant's Ability To Withstand A Greater Judgment (*Grinnell* Factor 7)

Condé Nast probably could withstand a greater judgment.  However, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."  *Frank*, 228 F.R.D. at 186.  Moreover, during the litigation Class Counsel reviewed, considered, and made allowance for relevant factors such as financial challenges facing the media industry and Condé Nast's insurance posture as related to the claims in this case.  *See Advance Publications, Inc. v. Mutual Ins. Co. Ltd.*, Index No. 656339/2018 (Sup. Ct. N.Y. Cnty.) (insurance coverage litigation).  Thus, at worst, this factor is neutral.

### 6.   The Settlement Amount Is Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (Fed. R. Civ. P. 23(e)(2)(C)(i) And *Grinnell* Factors 8 And 9)

The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum."  *Frank*, 228 F.R.D. at 186.  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought.  As the Second Circuit stated in *Grinnell*, "[t]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a

single percent of the potential recovery."  495 F.2d at 455 n.2.

Here, Class Counsel projects that each Class Member is expected to receive $75 in cash. In addition, Defendant has agreed to pay the costs of notice and administration as well as reasonable attorneys' fees, costs, and expenses for Class Counsel from the all-in fund established by the Settlement.  Agreement ¶¶ 1.33, 8.1.  Weighing the benefits of the Settlement against the risks associated with proceeding in litigation and in collecting on any judgment, the Settlement is more than reasonable.

Further, Class Counsel estimates that class-wide statutory damages would exceed $5.75 billion.  Thus, it would not be possible to recover based on statutory damages in this matter, and any settlement negotiations based on statutory damages amounts were a non-starter.

Moreover, where – as here – a settlement assures immediate payment of substantial amounts to Class Members, and does not "sacrific[e] 'speculative payment of a hypothetically larger amount years down the road,'" the settlement is reasonable under this factor.  *See Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, *5 (S.D.N.Y. Mar. 24, 2008) (quoting *Teachers' Ret. Sys. Of Louisiana v. A.C.L.N. Ltd.*, 2004 WL 2997957, *5 (S.D.N.Y. May 14, 2004)).  Thus, these *Grinnell* factors also weigh in favor of final approval.

* * *

All of the *Grinnell* factors weigh in favor of approval and the Settlement on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani,* 218 F.3d 132, 138-39 (2d Cir. 2000)).  The Court should therefore grant final approval.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant her Motion for Final Approval of the Settlement and enter the Final Approval Order in the form submitted herewith.

Dated:  February 11, 2019

Respectfully submitted,


By:     */s/ Joseph I. Marchese*
    Joseph I. Marchese

**BURSOR & FISHER, P.A.**
Scott A. Bursor
Joseph I. Marchese
Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
    jmarchese@bursor.com
    pfraietta@bursor.com

*Class Counsel*